UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL BLACK,

    Plaintiff,

v.

DAVID A. CLARKE, JR., et al.

    Defendants.

Civil Action No. 2:17-cv-00156

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

## INTRODUCTION

Defendant David A. Clarke, Jr., the former Milwaukee County Sheriff, is arguably the most recognizable face of local law enforcement in the country, and a vocal one. As such, he has been the target of numerous threats of violence and expressions of hatred. Some of these threats and expressions of hate have been communicated electronically through social media, and some individuals have threatened Clark in person, including in closely-confined spaces such the waiting area of an airport gate and on an airplane. Clarke has a high-risk security profile that requires additional protection by armed security personnel, threat assessments, and Clarke himself to be more aware of potential danger in public places.

Given this history, Clarke requested that Milwaukee County Sheriff's deputies conduct a field interview of Plaintiff Daniel Black after he had an unusual interaction with Clarke on a flight from Dallas to Milwaukee. Specifically, he requested a field interview after a physically-imposing stranger, by his own admission, stared him down and gestured in a manner expressing "displeasure." As a precautionary measure, Clarke requested deputies to engage in a consensual, non-coercive interview in a public space to gather information and identification. Indeed,

Plaintiff admitted in deposition testimony that the deputies who questioned him were "extremely kind." After the approximately 15 minute long field interview concluded, the deputies escorted Plaintiff through the airport and to a waiting car.

Nevertheless, Plaintiff brings suit against Clarke and Milwaukee County, under 42 U.S.C. § 1983, asserting that (1) he was arrested and interrogated by Milwaukee County Sheriff's deputies at General Mitchell International Airport and that Clarke's alleged order to do so was unlawful, and (2) Clarke and the County had a policy and practice to unreasonably seize individuals and violated plaintiff's right to equal protection.

Plaintiff's suit fails for many reasons. First, as a matter of law, no reasonable jury could conclude that the field interview effected a seizure under the Fourth Amendment. Second, even if it did, Clarke is entitled to qualified immunity because, as a matter of law, no reasonable official, especially an official with a high risk security profile such as Clarke's, would believe that he or she was violating Plaintiff's constitutional rights by requesting a cooperative field interview after interacting with Plaintiff. Third, once interacting in an unusual manner with a high profile public official, there is no clearly established right on the part of Plaintiff to be free from non-coercive questioning and identification by law enforcement officers. Fourth, the claim against Milwaukee County also fails because (a) Plaintiff cannot establish the existence of a policy or custom on the part of the County that caused any violation of Plaintiff's constitutional rights; and/or (b) to the extent that Plaintiff claims the County is liable because of a single act or decision by a policymaker, that "decision" was merely a directive to request a cooperative field interview, not an order to arrest or otherwise unlawfully seize Plaintiff, and it was therefore, constitutional. Fifth and finally, any putative equal protection claim also fails.

For these reasons, and as set forth in more detail below, defendants are entitled to summary judgment with respect to Plaintiff's claims against them pursuant to Fed. R. Civ. P. 56.

## UNDISPUTED MATERIAL FACTS

Defendants respectfully refer this Court to the Proposed Findings of Fact in Support of Defendants' Motion for Summary Judgment ("DPFOF") for a complete statement of the material, undisputed facts in this action.

## STANDARD OF REVIEW

The standard for judging summary judgment motions is well known to the Court. Summary judgment must be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphases in original). An "issue of material fact" is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

## ARGUMENT

Plaintiff's entire lawsuit is predicated upon one legal conclusion, that, if shown to be untrue, dooms his action. Specifically, Plaintiff asserts that an entirely voluntary, casual, and friendly interaction with two Sheriff's deputies in an unsecured, open area during which the deputies verified Plaintiff's identity and other background facts (including a shared collegiate rugby history), that lasted no more than 15 minutes, is an unconstitutional seizure in the form of an arrest. As discussed in greater detail below, this legal conclusion is incorrect and Plaintiff's case should be dismissed. However, even if this Court finds that defendants are not entitled to a summary judgment on that basis at this time, defendants still succeed because Clarke is entitled to qualified immunity.

Therefore, this Court may address one, and possibly two, questions: taking the facts in the light most favorable to Plaintiff, (i) whether Plaintiff's Fourth Amendment right to be free from an unreasonable seizure was violated when he was questioned; and (ii) if so, was the right in question (i.e., not to be questioned under the facts at issue here) clearly established at the time of the occurrence. *See Estate of Miller ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012). If either question is answered in the negative, Plaintiff's claims must be dismissed and this Court need not answer both questions. *See Hanes v. Zurick*, 578 F.3d 491, 493 (7th Cir. 2009).

Here, because Plaintiff cannot show that an unreasonable seizure occurred, defendants are entitled to summary judgment without even reaching the second inquiry. However, even if this Court determines that defendants are not entitled to summary judgment on the first question, Plaintiff's suit must still be dismissed because the right that Clarke is alleged to have violated was not clearly established in relation to the specific facts of this case, nor is it a right that every reasonable official understands would be violated if that official acted as Clarke did in requesting the non-coercive field interview.

## I. THE FIELD INTERVIEW OF PLAINTIFF DID NOT CONSTITUTE A SEIZURE WITHIN THE MEANING OF THE FOURTH AMENDMENT.

### A. What Constitutes a Seizure Under the Fourth Amendment.

The Fourth Amendment protects "[t]he rights of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Of course, not all encounters between the police and citizens implicate the Fourth Amendment's protections against unreasonable seizures. *United States v. Scheets*, 188 F.3d 829, 836 (7th Cir. 1999). The Seventh Circuit has recognized three categories of police-citizen encounters:

> The first category is an arrest, for which the Fourth Amendment requires that police have probable cause to believe a person has committed or is committing a crime. The second category is an investigatory stop, which

> is limited to a brief, non-intrusive detention. This is also a Fourth Amendment "seizure," but the officer need only have specific and articulable facts sufficient to give rise to a reasonable suspicion that a person has committed or is committing a crime. *The third category involves no restraint on the citizen's liberty, and is characterized by an officer seeking the citizen's voluntary cooperation through non-coercive questioning. This is not a seizure within the meaning of the Fourth Amendment*.

*Id.* (citing *United States v. Johnson*, 910 F.2d 1506, 1508 (7th Cir. 1990)) (emphasis added). Courts apply an objective standard in determining which of the above categories a specific police-citizen encounter falls under. *Id.*

"It is well established that a seizure does not occur merely because a police officer approaches an individual and asks him or her questions." *United States v. Smith*, 794 F.3d 681, 684 (7th Cir. 2015); *Florida v. Royer*, 460 U.S. 491, 497 (1983) ("[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, [or] by putting questions to him if the person is willing to listen . . . ."). The test for determining if there has been a seizure is "whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about this business." *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (quotation marks and citation omitted). If the reasonable person would feel free to disregard the police and go about his business, then the encounter is consensual and no reasonable suspicion is required. *Id.* at 434 (citing *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968)).

Circumstances that suggest a seizure occurred include:

> the threatening presence of several officers, display of their weapons, physical touching of the private citizen, use of forceful language or tone of voice (indicating that compliance with the officers' request might be compelled), and the location in which the encounter takes place. Courts also consider whether police made statements to the citizen intimating that he or she was a suspect of a crime, whether the citizen's freedom of movement was intruded upon in some way, whether the encounter

> occurred in a public or private place, and whether the officers informed the suspect that he or she was free to leave.

*Smith*, 794 F.3d at 684 (quotation marks and citations omitted). Additional factors identified by the Seventh Circuit include the types of questions asked by the officers and the duration of the questioning. *United States v. Sterling*, 909 F.2d 1078, 1082 (7th Cir. 1990). These factors are neither exhaustive nor exclusive. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). "In the absence of some such evidence, otherwise inoffensive contact between a member of the public and the police cannot, as a matter of law, amount to a seizure of that person." *Id.* at 554-55.

### B. The Field Interview Of Plaintiff Did Not Constitute A Seizure Within The Meaning Of The Fourth Amendment.

Under the totality of the circumstances in this case, the field interview of Plaintiff that Clarke requested and that deputies conducted was not a seizure. The factors listed above, coupled with Clarke's well-known notoriety, would lead a reasonable person to conclude that the encounter with deputies was consensual and non-restraining.

First, Clarke undisputedly requested that only a field interview be conducted of Plaintiff, to both Inspector Bailey by phone and Captain Witek by text. (DPFOF ¶¶ 32, 39.) It is also undisputed that Captain Witek ordered deputies to conduct nothing more than a field interview, and, unless circumstances changed, that the deputies themselves understood that a field interview was all they were to do. (DPFOF ¶¶ 42, 45.) One of the deputies testified in his deposition that both deputies agreed that they wanted to "just get [Plaintiff] identified and be done with it." (*Id.* ¶ 45.)

Second, only two officers conducted Plaintiff's field interview and did so in a non-threatening manner without physically intruding into Plaintiff's personal space and without

touching Plaintiff.[1] While these deputies were in uniform and presumably armed, there is no allegation and no evidence in the record that they displayed their weapons to Plaintiff. Nor is there any allegation or evidence in the record of the deputies touching Plaintiff in any way or otherwise intruding upon his personal space in a threatening manner. In fact, the deputies kept their physical distance from Plaintiff: while walking with him to an open area of the airport concourse where the field interview was to be conducted, one deputy walked several feet to Plaintiff's left while the other deputy walked behind the first deputy. (*Id.* ¶ 58.) And, from the area of the field interview to outside of the airport, one deputy was approximately 10 feet in front of Plaintiff and the other deputy was several feet behind Plaintiff. (*Id.* ¶ 73.)

Third, there is no allegation by Plaintiff or evidence in the record of the deputies using forceful language or tone of voice. In fact, in his deposition testimony Plaintiff called the deputies who interviewed him "extremely kind." (*Id.* ¶ 79.) Moreover, after the deputies asked Plaintiff basic biographical questions and his account of what happened on the plane, the three of them engaged in a friendly discussion about their shared experiences as students at the University of Wisconsin-Milwaukee and playing rugby. (*Id.* ¶¶ 70-71.)

Fourth, the field interview was conducted in a public place, an airport. The deputies initially approached Plaintiff at Gate D54 when he deplaned, and but wanted to talk to him in another area of the concourse that was not as crowded as the gate area. (*Id.* ¶ 56.) The area that Plaintiff and two deputies stopped at and talked was an open area at the center of Concourse D, on the way to the main terminal and airport exit, near a coffee stand. (*Id.* ¶ 57.) The deputies

---

[1] Per standard operating procedure, three of the five officers who greeted Clarke at Gate D54 routinely do so, including Captain Witek, a sergeant, and a canine-handling deputy and her dog. (DPFOF ¶ 46, 48, 49.) So, while it is true that five officers and a dog were indisputably in the gate area when Plaintiff deplaned, Clarke, three officers, and the dog immediately left the area after Clarke pointed out Plaintiff to the two deputies tasked with conducting the field interview. (*Id.* ¶ 52.)

never took Plaintiff to a private or restricted area of the airport that was inaccessible to the public.

Fifth, there is no allegation or evidence in the record that either deputy communicated to Plaintiff that he was a suspect of a crime. The deputies had limited information from Captain Witek about what occurred on the flight, and that it may have involved harassment of Clarke (*id.* ¶ 43), but wanted to hear Plaintiff's version of events, which is the point of a field interview. Consequently, the deputies were interested in identifying Plaintiff, confirming his identity with dispatch, asking basic biographical information, and having Plaintiff provide an account of what happened on the airplane. (*Id.* ¶¶ 59, 61, 64.)

Sixth, as a matter of law, Plaintiff's admitted failure to inquire whether he was free to leave the field interview (*id.* ¶ 75) dooms his claims that he was "seized" for many reasons. Numerous courts have repeatedly held that a suspect's failure to clarify his arrest status Plaintiff's failure to inquire whether he was free to leave must doom his assertion that he was unconstitutionally seized. When a suspect does not ask whether he was free to leave, "the inference arises that he does not want to terminate the questioning but instead wants to use the opportunity to deflect the suspicion of the police." *Hall v. Bates,* 508 F.3d 854, 857 (7th Cir. 2007). Furthermore, there is no "a *Miranda*-like rule requiring police whenever they question someone … to advise him that he is not under arrest and is therefore free to leave at any time." *Id.* at 857. [S]peculation by judges or juries on whether the circumstances of a particular interrogation were so intimidating that the average person being questioned would have thought himself under arrest" is not required; rather, the burden is on the individual to ask whether he is free to leave. …" *Id.* at 858. Even when a suspect reasonably claims that he reasonably believed that he was not free to leave, as Plaintiff has alleged here, it is the duty of the suspect to ask.

MIL-28772948-1
8
Case 2:17-cv-00156-JPS   Filed 09/11/17   Page 8 of 18   Document 16

Otherwise, "[i]t's as if one were in a room with the door closed and rather than turning the knob one sued for false imprisonment, though in fact the door was not locked." *Id.*

Moreover, the actual field interview—from the time that the questioning commenced in the middle of Concourse D until surveillance video showing Plaintiff and the deputies exiting Concourse D on the way out of the airport—lasted no more than 15 minutes. (DPFOF ¶ 74.) The duration of the field interview was likely extended because dispatch needed to run Plaintiff's name twice to confirm his identity and whether any warrants were outstanding, per standard practice, and part of that time was spent conversing about shared experiences at the University of Wisconsin-Milwaukee and playing rugby. (*Id.* ¶¶ 62, 63, 70.)

Finally, as a national political figure, Clarke has a high-risk security profile, which further undermines Plaintiff's claim that he was unconstitutionally seized. *Cf. Mendenhall*, 446 U.S. at 554. (holding that the list of factors to determine whether an encounter is a seizure is not exhaustive. *Mendenhall*, 446 U.S. at 554.). Clarke had been the subject of numerous threats to his physical safety during his tenure as sheriff. (DPFOF ¶¶ 8, 11.) He had been verbally and even physically accosted previously in an airport and on an airplane. (*Id.* ¶¶ 12-14.) As a result, it was reasonable for Clarke to request a field interview by deputies after a physically-imposing six foot, four inch high stranger weighing 257 pounds, by his own admission, stared down Clarke in the close confines of an airplane and gestured at him in a manner expressing displeasure. (*Id.* ¶¶ 2, 21, 23.) To the extent that plaintiff may dispute when he stared down Clarke, the dispute is irrelevant since the conduct was objectively threatening under the totality of the circumstances, which includes the numerous other unprovoked confrontations among Clarke and other private citizens on airplanes and/or in airports Also, Inspector Bailey and Captain Witek were aware of the heightened risk surrounding Clarke and previous confrontations he had while traveling, as did the two deputies. (*Id.* ¶¶ 28, 43.) Therefore, Clarke's request to conduct a field interview of

Plaintiff (and the execution of that request) was objectively reasonable and did not constitute a seizure.

In short, no reasonable jury could conclude that the field interview of Plaintiff rose to the level of a seizure within the meaning of the Fourth Amendment because, under the totality of the circumstances, the order requiring a field interview, as well as the manner and method of the interview itself were reasonable and no reasonable person would have thought that he was not free to leave and go about his business.

## II. CLARKE IS ENTITLED TO QUALIFIED IMMUNITY.

### A. The Law of Qualified Immunity.

"Public officials are immune from suit under 42 U.S.C. § 1983 unless they have 'violated a statutory or constitutional right that was clearly established at the time of the challenged conduct.'" *City & Cty. of S.F. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) (quoting *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2023 (2014)). A prior case exactly on point is not necessarily required. *See, e.g.*, *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011). However, "[a]n officer 'cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in [his] shoes would have understood that he was violating it.'" *Sheehan*, 135 S. Ct. at 1774. In other words, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This exacting standard 'gives government officials breathing room to make reasonable but mistaken judgments' by 'protect[ing] all but the plainly incompetent or those who knowingly violate the law.'" *Sheehan*, 135 S. Ct. at 1774 (quoting Ashcroft, 563 U.S. at 743).

The plaintiff always bears the burden of establishing the existence of a clearly established constitutional right violated by the public official. *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th

Cir. 2015); *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir. 1996). "When reasonable minds could differ, in the typical summary judgment decision the balance tips in favor of the nonmovant while in the qualified immunity context the balance favors the movant." *Ellis v. Wynalda*, 999 F.2d 243, 246 n.2 (7th Cir. 1993).

In *Sheehan*, the Supreme Court criticized the Ninth Circuit for misreading prior Supreme Court precedent concerning qualified immunity. Specifically, the Court criticized the Ninth Circuit for defining the right in question—there, the Fourth Amendment right to be free from unreasonable searches and seizures—at too high a level of generality. As the Court stated:

> [N]othing in our cases suggests the constitutional rule applied by the Ninth Circuit. The Ninth Circuit focused on *Graham v. Conner*, but *Graham* holds only that the "objective reasonableness" test applies to excessive-force claims under the Fourth Amendment. That is far too general a proposition to control this case. "We have repeatedly told courts—and the Ninth Circuit in particular—not to define clearly established law at a high level of generality." *Qualified immunity is no immunity at all if "clearly established" law can simply be defined as the right to be free from unreasonable searches and seizures*.

135 S. Ct. at 1775–76 (citations omitted) (emphasis added). The Supreme Court repeated this admonition to the lower courts again in 2015. *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) ("We have repeatedly told courts . . . not to define clearly established law at a high level of generality."). As the Court framed the issue in *Mullenix*:

> The dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.

136 S. Ct. at 308 (internal quotations and citations omitted) (emphasis in original).

Even if the contours of the federal right in question are found to have been clearly delineated at the relevant time, a public official may still enjoy qualified immunity if it was objectively reasonable for him to believe that his actions did not violate the federal right. In fact, public officials are shielded from suit where officials "of reasonable competence could disagree"

that such acts were objectively reasonable. *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In other words, "if officers of reasonable competence could disagree . . . immunity should be recognized." *Id.*

> **B.     Plaintiff Cannot Show That Clarke Violated a Clearly-Established Constitutional Right.**

Even if Plaintiff could show an underlying constitutional violation by Clarke or the unnamed sheriff's deputies—which he cannot—he cannot show that Clarke violated a right that was clearly established as of January 15, 2017, given the particular factual circumstances of this case. Indeed, there is and was on January 15, 2017, no clearly established right on the part of an individual to avoid non-coercive questioning and identification by law enforcement after interacting with a public official who has a high-risk security profile. The alleged right at issue, given the specific facts of this case, has never been clearly established by the Supreme Court.

The right to be free from unreasonable seizures is an overly-generalized pronouncement that the Supreme Court has recently (*see Sheehan* and *Mullenix*) and specifically instructed the lower federal courts to avoid. Such a statement of the law is entirely too general such that no "reasonable official would [necessarily] have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). This statement of the law is precisely the type of generalization that the Supreme Court rejected in *Sheehan* on the grounds that "[q]ualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures." 135 S. Ct. at 1776. The Seventh Circuit has recognized the recent cautions of the Supreme Court against overly-generalizing the law of qualified immunity. *See*, *e.g.*, *Werner v. Wall*, 836 F.3d 751, 762 (7th Cir. 2016), *reh'g and suggestion for reh'g en banc denied* (Oct. 20, 2016), *cert. denied*, 137 S. Ct. 2213 (2017) (recognizing that "legal rights cannot be defined at a high level of generality) (citing *Mullenix*, 136 S. Ct. at 308); *Figgs v. Dawson*, 829 F.3d 895, 905 (7th Cir. 2016) ("The right allegedly

violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."); *Zimmerman v. Doran*, 807 F.3d 178, 182 (7th Cir. 2015) ("The Supreme Court has repeatedly cautioned against defining clearly established law at a high level of generality); *Kingsley v. Hendrickson*, 801 F.3d 828, 832 (7th Cir. 2015) ("[T]he Supreme Court has instructed us that we must define the right in question with a sufficient degree of particularity.").

> C. **Plaintiff Cannot Demonstrate That Every Reasonable Official in Clarke's Shoes Would Have Known That He Was Violating Plaintiff's Constitutional Rights By Requesting a Field Interview.**

Even if Plaintiff could show that the right in question here was clearly established (which he cannot), Clarke would still be entitled to qualified immunity. It must be "beyond debate" to a public official of reasonable competence that Clarke's conduct was unreasonable. In other words, "if officers of reasonable competence could disagree . . . immunity should be recognized." *Malley*, 475 U.S. at 341.

With that standard in mind: Is it true that all reasonable officers would conclude that it was a violation of Plaintiff's constitutional rights for Clarke to request a field interview after he had an unusual interaction with a physically-imposing stranger on an airplane who, by his own admission, stared down Clarke and gestured at him in a manner expressing "displeasure"? And would all reasonable officers reach that same conclusion if they had previous confrontations and multiple threats against their lives? In light of the precedent discussed herein, the answer is most certainly "no."

## III. PLAINTIFF CANNOT SUSTAIN HIS *MONELL* CLAIM AGAINST MILWAUKEE COUNTY.

A local government entity cannot be held responsible under § 1983 based on the principles of *respondeat superior* liability. *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). Instead, a local governmental entity is liable only for acts for which the entity

itself is responsible, meaning acts the entity has embraced as policy or custom that are the source of a constitutional injury. *Id.* at 690-91 & 694. Thus, to establish a basis for municipal liability under *Monell*, a plaintiff must prove that:

> (1) the alleged constitutional deprivations were conducted pursuant to an express policy, statement, ordinance, or regulation that, when enforced, caused the constitutional deprivation;
>
> (2) the conduct was one of a series of incidents amounting to an unconstitutional practice so permanent and well-settled as to constitute a "custom or usage" with force of law; or
>
> (3) the conduct was a decision of a municipal policymaker with final policymaking authority in the area at issue.

*See McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000).

Notwithstanding their breadth, Plaintiff's allegations do not provide a basis for § 1983 liability on the part of Milwaukee County because plaintiff cannot satisfy the three criteria under *Monell*. Indeed, there are no grounds to conclude that any of the underlying constitutional violations alleged by Plaintiff were the result of an express, unconstitutional policy of Milwaukee County. To the extent that plaintiff alleges that a decision by the Milwaukee County Board of Supervisors or Clarke caused a constitutional deprivation, or that the alleged constitutional violations were the result of an unconstitutional custom or practice on the part of the County, Plaintiff cannot satisfy his burden of proof under the stringent standards set by *Monell*.

### A. Reliance On A Single Incident To Prove A Custom or Practice Is Insufficient.

"To establish a municipal policy or custom, the plaintiff must allege *a specific pattern or series of incidents* that support the general allegation of a custom or policy." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986) (emphasis added). A single incident, when unaccompanied by supporting history, does not provide an adequate basis for inferring a policy or custom. *McKee v. City of Rockwell*, 877 F.2d 409, 415-16 (5th Cir. 1989). The Seventh
MIL-28772948-1        14
Case 2:17-cv-00156-JPS   Filed 09/11/17   Page 14 of 18   Document 16

itself is responsible, meaning acts the entity has embraced as policy or custom that are the source of a constitutional injury. *Id.* at 690-91 & 694. Thus, to establish a basis for municipal liability under *Monell*, a plaintiff must prove that:

> (1) the alleged constitutional deprivations were conducted pursuant to an express policy, statement, ordinance, or regulation that, when enforced, caused the constitutional deprivation;
>
> (2) the conduct was one of a series of incidents amounting to an unconstitutional practice so permanent and well-settled as to constitute a "custom or usage" with force of law; or
>
> (3) the conduct was a decision of a municipal policymaker with final policymaking authority in the area at issue.

*See McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000).

Notwithstanding their breadth, Plaintiff's allegations do not provide a basis for § 1983 liability on the part of Milwaukee County because plaintiff cannot satisfy the three criteria under *Monell*. Indeed, there are no grounds to conclude that any of the underlying constitutional violations alleged by Plaintiff were the result of an express, unconstitutional policy of Milwaukee County. To the extent that plaintiff alleges that a decision by the Milwaukee County Board of Supervisors or Clarke caused a constitutional deprivation, or that the alleged constitutional violations were the result of an unconstitutional custom or practice on the part of the County, Plaintiff cannot satisfy his burden of proof under the stringent standards set by *Monell*.

### A. Reliance On A Single Incident To Prove A Custom or Practice Is Insufficient.

"To establish a municipal policy or custom, the plaintiff must allege *a specific pattern or series of incidents* that support the general allegation of a custom or policy." *Henry v. Farmer City State Bank*, 808 F.2d 1228, 1237 (7th Cir. 1986) (emphasis added). A single incident, when unaccompanied by supporting history, does not provide an adequate basis for inferring a policy or custom. *McKee v. City of Rockwell*, 877 F.2d 409, 415-16 (5th Cir. 1989). The Seventh

Circuit has stated that although it has not adopted "bright-line rules for establishing what constitutes a widespread custom or practice, it is clear that a single incident – or even three incidents – do not suffice." *Wilson v. Cook Cty.*, 742 F.3d 775, 780 (7th Cir. 2014); *see also Cornfield by Lewis v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316, 1327 (7th Cir. 1993) (finding two prior instances of student strip searches insufficient to show a pattern of constitutional violations). Under this standard, it is not enough to demonstrate that Clarke or the County "could, or even should, have been aware of *the unlawful activity* because it occurred more than once." *Phelan v. Cook Cty.*, 463 F.3d 773, 790 (7th Cir. 2006) (emphasis added). Rather, there must be "evidence demonstrating that the unlawful practice was so pervasive that acquiescence on the part of policymakers was apparent and amounted to a policy decision." *Id.* And, significantly, where the evidence discloses only a single incident of unconstitutional activity, such proof is generally insufficient to impose *Monell* liability unless it is also established that the constitutional deprivation was caused by an existing municipal policy or custom that was itself unconstitutional. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985).

Here, there is no allegation by Plaintiff that the County had an existing policy that causes unreasonable seizures that was unconstitutional on its face. Moreover, there is no evidence in the record suggesting the existence of a pattern or series of events where Clarke ordered Milwaukee County Sheriff's deputies to unreasonably seize an individual without probable cause or reasonable suspicion. To the extent that Plaintiff asserts the two previous confrontations that Clarke had onboard an airplane and at an airport constitute a pattern, those incidents are easily distinguishable from the present case. In both cases, Clarke did not order local law enforcement in foreign jurisdictions to perform any action; in fact, he was outside of his jurisdiction (on the ground in Charlotte, North Carolina and Dallas) and could not give any orders in those

jurisdictions. (DPFOF ¶¶ 13-14.) Additionally, in both cases there was adequate legal justification for a heightened police interaction; the intoxicated and unruly passenger on a plane to Charlotte berated Clarke throughout the flight, while the passenger in the Dallas/Fort Worth airport threatened to "find" and "get" Clarke. (*Id.*) Here, in contrast, Clarke merely requested a field interview to identify Plaintiff and gather information from him. Even if the previous two confrontations could be considered similar to the instant case, it is clear that the three incidents together do not constitute a widespread custom or practice under Seventh Circuit case law. *Wilson*, 742 F.3d at 780.

> **B.** **Assuming That Clarke Was A Final Policymaker, His Decision To Request A Field Interview of Plaintiff Was Constitutional.**

"[M]unicipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). Of course, "a municipality may be liable under § 1983 for a single decision by its properly constituted legislative body." *Id.* The Supreme Court also has concluded that the language of *Monell* "expressly envisioned other officials whose acts or edicts may fairly be said to represent official policy, and whose decisions therefore may give rise to municipal liability under § 1983." *Id.* (citation omitted). However, "not every decision by municipal officers automatically subjects the municipality to § 1983 liability. Municipal liability attaches only where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered. *Id.* at 481. Additionally, municipal liability will attach "to a single decision to take *unlawful action* made by municipal policymakers." *Id.* at 483 (emphasis added).

Here, assuming for the purposes of this summary judgment that Clarke was a final policymaker, his sole decision to request a field interview of Plaintiff was not itself unlawful for the reasons explained above. Therefore, if the underlying action or decision by Clarke was reasonable and lawful, the County cannot be held liable under § 1983.

### C. Plaintiff's Right to Equal Protection Was Not Violated.

Plaintiff's complaint makes vague references to alleged violations of equal protection but does not make a separate claim. To the extent that Plaintiff does assert a violation of his equal protection rights, this claim, too, fails. The Fourteenth Amendment's Equal Protection Clause declares that no State may "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. "The equal protection clause requires that all similarly situated persons be treated in a similar manner." *DeSalle v. Wright*, 969 F.2d 273, 275 (7th Cir. 1992). Plaintiff's equal protection claim, such that he is asserting one, fails because the record shows that he was either not similarly situated to other passengers on the airplane with Clarke, or, if he was, he was treated the same.

Finally, to the extent that Plaintiff brings a "class of one" claim, he cannot meet any of its requirements. Plaintiff must show "(1) [he] has intentionally been treated differently from other similarly situated [individuals]; and (2) there is no rational basis for the difference in treatment *or* the cause of the differential treatment is a totally illegitimate animus . . . ." *Woodruff v. Mason*, 542 F.3d 545, 554 (7th Cir. 2008), *abrogation on other grounds recognized by Kodish v. Oakbrook Terrace Fire Protection Dist.*, 604 F.3d 490, 501 (7th Cir. 2010). In a "class of one" claim, the "similarly situated" requirement is more stringent than the same requirement in a conventional equal protection claim, requiring the plaintiff and similarly situated persons to be not just similar, but "prima facie identical in all relevant respects." *Id.* As for the first prong, for the reasons noted above, Plaintiff was not similarly situated to other passengers on the airplane because none of them engaged in a stare down and visual gesture of displeasure with Clarke. As for the second prong, any difference in treatment was reasonable or justified given the unusual interaction that Clarke had with Plaintiff on the plane, especially in light of Clarke's ongoing security concerns; any difference in treatment certainly satisfies the lesser standard of rational

basis review. Finally, the record is utterly devoid of any animus shown by Clarke or any Milwaukee County Sheriff's Office personnel prior to and during the field interview.

## **CONCLUSION**

For all of the foregoing reasons, defendants submit that this Court should grant their motion for summary judgment and dismiss Plaintiff's claims against them in their entirety, together with such other and further relief as may be appropriate under the circumstances.

Dated this 11th day of September, 2017.

s/ Charles H. Bohl
Charles H. Bohl
Andrew A. Jones
Kurt M. Simatic

Attorneys for Milwaukee County and David A. Clarke, Jr.

HUSCH BLACKWELL LLP
555 East Wells Street, Suite 1900
Milwaukee, Wisconsin 53202-3819
Telephone: 414-273-2100
Fax: 414-223-5000
Email: Charles.Bohl@huschblackwell.com
Email: Andrew.Jones@huschblackwell.com
Email: Kurt.Simatic@huschblackwell.com